STEVEN G. KALAR
Federal Public Defender
ELIZABETH M. FALK
Assistant Federal Public Defender
19th Floor Federal Building
450 Golden Gate Avenue
San Francisco, CA 94102
(415) 436-7700

Counsel for Defendant HUNTER

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ANTHONY HUNTER,<br><br>Defendant. | No. CR 11-566 RS<br>No. CR 18-73 RS<br><br>**DEFENDANT'S SENTENCING MEMORANDUM**<br><br>Date:  June 25, 2019<br>Time:  2:30 p.m.<br>Court: The Honorable Richard Seeborg |

On June 4, 2019, this Court found Mr. Hunter in violation of his supervised release based upon the facts adduced at an evidentiary hearing conducted in Case No. 18-542 RS.  In sum, the Court found Mr. Hunter in violation of his release based on photographs and videos introduced at the hearing that indicated Mr. Hunter was in possession of a firearm on October 18, 2018.  Per Chapter 7 of the United States Sentencing Guidelines, this conduct is a Grade B violation.  At the time of sentencing on each of the two underlying cases, Mr. Hunter fell under CHC VI.  The undisputed Guideline range for the violation is accordingly 21-27 months.  In recognition of the struggles Mr. Hunter has had while on

1

CR 11-566 RS; 18-73 RS, *United States v. Hunter*
SVR Sentencing Memorandum

supervised release, the defense requests a Guideline sentence of 21 months in custody followed by a 15-month term of supervision that includes a 6-month term of residential drug treatment.

The government seeks a 4-year term of imprisonment for Mr. Hunter; the 2-year maximum in Case No. 11-566 (felon in possession of a firearm), *run consecutive to* the 2-year maximum in Case No. 18-73 (escape). This is a heavy handed recommended on a supervised release violation, and one that appears to be unprecedented in terms of its request for *consecutive* statutory maximum terms. Although the government makes plenty of valid points about Mr. Hunter's history, this case as a whole does not warrant the imposition of the absolute maximum sentence allowable under the law. This Court should instead follow the defendant's recommendation.

### I. MR. HUNTER IS AS TROUBLED AS IS HIS BACKGROUND AND STILL NEEDS THE ASSISTANCE OF THE PROBATION DEPARTMENT.

The government is 100% correct that Mr. Hunter has a troubled criminal history and supervision background, and Mr. Hunter would be foolish to argue otherwise. As the video evidence introduced at the evidentiary hearing readily reveals, Mr. Hunter has a raging drug problem that stems from his mother's daily crack cocaine use during her pregnancy. Indeed, Mr. Hunter's damaged approach to life is highly unsurprising given his background and history. He was one of the ubiquitous 1980's "crack babies" that President Reagan used as a symbol to impose steep penalties on crack cocaine distribution. His childhood was unpredictable and abusive. He has abused drugs from the get go, and all his impulsive decisions stem from that addiction. This is neither and excuse, nor a justification – it's just a fact. The only way to reform Mr. Hunter is to treat the addiction that he suffers from and the concurrent brain interference this addiction causes. Anyone watching the body camera videos from the hearing can see that Mr. Hunter is not merely high – he is practically incoherent from heroin use at the time of his 2:00 a.m. arrest. He has to want to be treated, however, and the treatment has to be available.

2
CR 11-566 RS; 18-73 RS, *United States v. Hunter*
SVR Sentencing Memorandum

Both factors are now ripe for consideration. After watching his own behavior and affect in the evidentiary hearing videos, Hunter is in strong desire of residential treatment after the imposition of custody. It is imperative that no matter what custodial sentence this Court imposes, the judgment should also include a mandatory order for residential drug treatment. As best the PSR reveals, residential treatment has never before been ordered in any of Hunter's cases. Such treatment should not be at the discretion of the Probation Department; it must be mandatory.

The government suggests that a longer custodial term will serve rehabilitative purposes. Nothing could be farther from the truth. Hunter just finished a nearly 8-year term of continuous custody with the BOP. Clearly, this incarceration did nothing to address Hunter's addiction or his impulsive thinking, and it did not provide him with vocational training nor educational advancement. A lengthy BOP sentence here purely serves the purposes of punishment and containment. Those are, of course, important goals for the Court to consider. But it would be completely disingenuous for the Court to impose a 4-year term of incarceration for the *other reasons* the government suggests in Section IIIE of its memorandum. *See* Gov. Memo at 5.

Instead, the government essentially argues that this Court should impose the absolute maximum 4-year term of custody simply because it has the statutory authority to do so, and Hunter has a demonstrable poor record on supervision. Hunter disputes neither of these points – but strongly disputes that the nature of the conduct, the case, and his underlying convictions support an all-out max out. In the undersigned's 16-year history in this job, she cannot recall *one time* that *any* court in this District has imposed *consecutive* sentences of imprisonment on concurrent terms of supervised release. This begs the question – is this the particular case that the Court should change course from the usual practice? A review of the nature of the underlying convictions for which Mr. Hunter is on supervised release reveals that the resounding answer to this question is "no."

//

3
CR 11-566 RS; 18-73 RS, *United States v. Hunter*
SVR Sentencing Memorandum

## II. THE NATURE OF THE VIOLATION AND THE PRIOR CONVICTION, PARTICULARLY THE ESCAPE CHARGE, DOES NOT WARRANT THE IMPOSITION OF A 24 MONTH CONSECUTIVE TERM OF IMPRISONMENT ON TOP OF A 24 MONTH TERM OF IMPRISONMENT IN THE PRIOR FELON-IN-POSSESSION CASE.

As far as the prior felon-in-possession case is concerned, Mr. Hunter has no quarrel with this Court imposing a 21-month term of incarceration as just punishment for his behavior and for protection of the public purposes. Indeed, Hunter realistically understands that his behavior deserves Guideline-level punishment in the context of his prior gun case, and his own recommended sentence is very close to the 24-month statutory maximum for a supervised release violation.

The escape case, however, is a different story. In 2018, Hunter was convicted of walking away from the halfway house at the end of his sentence in Case No. 11-566 RS. The parties in that case agreed that the applicable Offense Level was 7. *See* Dkt. 11, Case No. 18-73 RS (Joint Sentencing Memo in Lieu of a PSR) at 2. Because Hunter lost almost 8 months of good time on his felon-in-possession case as a result of his ill-founded halfway house departure, this Court imposed a 4-month sentence for the escape charge "to be served *concurrently* with CR-11-566 RS". *See id.*, Dkt. 19 at 2 (emphasis added). Moreover, as best the undersigned recalls, the three-year supervision term in the escape case was imposed *pro forma* – not after argument in opposition or any reasoned consideration by the Court that it was necessary to place Hunter on supervised release for two different cases. A review of both judgments reveal identical conditions imposed in both cases. It would make absolutely no sense for the Court to now run a supervised release violation *consecutively* to Case No. 11-566 RS when *the initial judgment itself* imposed a *concurrent* term of imprisonment.

Moreover, the government's requested sentence on this supervised release violation in case no. 18-73 RS is *6 times longer* than the 4-month sentence that this Court imposed on the actual underlying case. It is also nearly half of the statutory maximum for the offense itself, which as a Class D felony has a maximum term of imprisonment of 5 years. *See* 18 U.S.C. § 751. The means by which Hunter

4

CR 11-566 RS; 18-73 RS, *United States v. Hunter*
SVR Sentencing Memorandum

violated this statute – walking away from a non-secure facility like a halfway house – is the most innocuous manner that this statute can be violated. Were Hunter on supervision for two different serious felony convictions committed at separate times – such as a gun case and a separate large scale drug distribution case, then the government's argument for consecutive time would be more colorable. But here, the second felony for which Hunter is under supervision is escape – a charge that arose directly from his failure to adequately finish his sentence in Case No. 11-566. The overall picture of the situation, and fundamental fairness, dictate that the Court impose a concurrent term of imprisonment for the violation at issue in these two related cases.

Finally, Hunter's conduct as portrayed at the evidentiary hearing is not so beyond-the-pale awful as to justify an unprecedented statutory max-out on supervised release at 4 years of custody, including a 6-fold increase of sentence on the underlying 4-month sentence for the escape conviction. Yes, it is terrible that Mr. Hunter yet again possessed a gun. It is sad and troublesome that Mr. Hunter has a serious and pernicious drug problem. But he did not shoot anyone nor promulgate any violence against anyone the night of the violation; if anything, he ran out of the hotel to make sure his girlfriend's friend was not dead or in imminent harm. He encouraged Williams' decision to call 911. Although the undersigned has not directly asked Mr. Hunter, it appears obvious that he had the firearm on him when he raced downstairs (he did not specially retrieve it from some stashed location, as it was his girlfriend's room), and he only had it in his hand for potential protection purposes. Further, upon detection and arrest, Mr. Hunter put up no resistance or struggle, told the police he had a federal warrant and that he was on active probation.

Make no mistake - this decision of Hunter's to have custody of a firearm *for any reason* is unlawful and wrong, and it is certainly not defensible in any way that Hunter continues to possess a firearm. The reality of his life, however, is that Hunter has been shot and nearly killed on at least one occasion. He carries firearms for protection, not for the purpose of aggression. The Criminal History,

5
CR 11-566 RS; 18-73 RS, *United States v. Hunter*
SVR Sentencing Memorandum

though not pretty, well bears this truth, as Hunter has no history of violent or aggressive conduct toward others whatsoever such as ADW, robbery, domestic violence, or attempted assault, injury or murder.  The truth of this case is that Hunter is not an aggressive criminal – he is a sadly drug riddled individual who was born against the odds of success, then was raised in the reality of the ghetto that once you're shot and nearly dead, you're always vulnerable.  Hunter does not carry a firearm to go out and hurt innocent people; he carries a firearm because he lives in constant fear he is going to be shot.  This by no means justifies his conduct, nor negates the dangerous implications of a person in his position carrying a firearm.  It is only mentioned to put Hunter in perspective with other criminal defendants who have no care for humanity or others and would shoot anyone in their path if given the opportunity.  There are far more dangerous defendants than Hunter for whom a statutory max-out and throwing away the key would be a more reasonable outcome.  The government's suggestion that Hunter is akin to those dangerous and violent criminals for whom it would be appropriate to "throw away the key" does not fit the facts.

## CONCLUSION

Based on the aforementioned arguments, Mr. Anthony Hunter respectfully requests a Guideline sentence of 21 months of custody, concurrent on both cases 11-566 RS and 18-73 RS, followed by a term of 15 months of supervised release that includes a mandatory 6 months of residential drug treatment.

Dated:  June 22, 2019

                                        Respectfully submitted,

                                        STEVEN G. KALAR
                                        Federal Public Defender

                                        /S/

CR 11-566 RS; 18-73 RS, *United States v. Hunter*
SVR Sentencing Memorandum

|   |   |
|---|---|
| 1 | ELIZABETH M. FALK |
|   | Assistant Federal Public Defender |